IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO AMIGON, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>-against-<br><br>SAFEWAY CONSTRUCTION ENTERPRISES LLC and STEVEN CESTARO, Jointly and Severally,<br><br>                              Defendants. | 20 Civ. 5222(PKC)(PK) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND AUTHORIZE NOTICE TO BE ISSUED TO ALL PERSONS SIMILARLY SITUATED**

**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

*Attorneys for Plaintiff and the putative Collective*

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................1

STATEMENT OF FACTS .................................................................................................1

ARGUMENT ......................................................................................................................6

I.    CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION IS APPROPRIATE...............................................................................................6

    A.    Conditional Certification Requires Only a Minimal Showing that Plaintiff Is Similarly Situated to Other Employees.................................6

    B.    All Defendants' Machine Operators Are Similarly Situated ....................8

II.    THE ISSUANCE OF A *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE................9

    A.    The Proposed Notice Is Fair and Accurate ............................................10

    B.    This Court Should Order Defendants to Produce the Limited Amount of Information Necessary to Ensure Timely and Effective Notice ............................12

CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Cano v. Four M Food Corp.*,
  No. 08-cv-3005, 2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009) ...................................8

*Chhab v. Darden Rests., Inc.*,
  No. 11-cv-8345, 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. Sept. 20, 2013) .........................11

*Cook v. United States*,
  109 F.R.D. 81 (E.D.N.Y. 1985) .............................................................................................12

*Garcia v. Four Bros. Pizza*,
  No. 13-cv-1505, 2014 U.S. Dist. LEXIS 75015 (S.D.N.Y. May 23, 2014) .............................8

*Gonzalez v. Scalintella, Inc.*,
  No. 13-cv-3629, 2013 U.S. Dist. LEXIS 168540 (S.D.N.Y. Nov. 22, 2013) ...........................7

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) .................................................................................................................11

*Hernandez v. Bare Burger Dio Inc.*,
  No. 12-cv-7794, 2013 U.S Dist. LEXIS 89254 (S.D.N.Y. June 25, 2013) ..........................6, 7

*Hinterberger v. Catholic Health Sys., Inc.*,
  No. 08-cv-3805, 2010 U.S. Dist. LEXIS 96435 (W.D.N.Y. May 13, 2010) ..........................11

*Hoffman-LaRoche, Inc. v. Sperling*,
  493 U.S. 165 (1989) ...............................................................................................6, 10, 11, 12

*Hoffman v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997) .........................................................................................12

*Lin v. Benihana Nat'l Corp.*,
  755 F. Supp. 2d 504, 514 (S.D.N.Y. 2010) ............................................................................12

*Morris v. Lettire Constr. Corp.*,
  896 F. Supp. 2d 265 (S.D.N.Y. 2012) ....................................................................................11

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) .................................................................................................6, 7

*Ramos v. Platt*,
  No. 13-cv-8957, 2014 U.S. Dist. LEXIS 100549 (S.D.N.Y. July 23, 2014) .......................7, 10

*Ravenell v. Avis Budget Car Rental, LLC*,
  No. 08-cv-2113, 2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010) .............................9

*Sanchez v. El Rancho Sports Bar Corp.*,
 No. 13-cv-5119, 2014 U.S. Dist. LEXIS 66234 (S.D.N.Y. May 13, 2014) ............................12

*Shain v. Armour & Co.*,
 40 F. Supp. 488 (W.D. Ky. 1941) ..........................................................................................6

*Shariar v. Smith & Wollensky Restaurant Group., Inc.*,
 659 F.3d 234 (2d Cir. 2011) ...................................................................................................6

*Spicer v. Pier Sixty LLC*,
 269 F.R.D. 321, 336 (S.D.N.Y. 2010) ................................................................................. 6-7

*Vasta v. Credico (USA) LLC*,
 No. 15-cv-9298, 2016 U.S. Dist. LEXIS 60158 (S.D.N.Y. May 5, 2016) ............................11

*Wraga v. Marble Lite, Inc.*,
 2006 U.S. Dist. LEXIS 60457 (E.D.N.Y. Aug. 22, 2006) ......................................................7

*Zheng Fang v. Yongjing Zhuang,*
 No. 10-cv-1290, 2010 U.S. Dist. LEXIS 133618 (E.D.N.Y. Dec. 1, 2010) ............................7


**STATUTES, RULES, AND REGULATIONS**

29 U.S.C.
 § 215(a)(3) .............................................................................................................................10
 § 216(b) ...................................................................................................................................6
 § 256(b) .................................................................................................................................12

**PRELIMINARY STATEMENT**

Named Plaintiff Antonio Amigon (the "Named Plaintiff") respectfully submits this memorandum of law in support of his motion for an order: (1) collectively certifying Plaintiff's Fair Labor Standards Act ("FLSA") unpaid overtime claim as an FLSA collective action on behalf of all machine operators who worked for Safeway Construction at any time between October 29, 2017 and the present (the "Collective Action Members"); (2) approving the Notice of Lawsuit with Opportunity to Join ("Notice") and Consent to Become a Party Plaintiff ("Consent") forms, attached to the Declaration of Brent Pelton ("Pelton Decl.") as Exhibits C and D; (3) directing Defendants to furnish to Plaintiff in electronically readable form the names, last known addresses, telephone numbers (including cell phone numbers) and e-mail addresses of all Collective Action Members so that Plaintiff can issue the Notice and requiring that the Notice be posted within Defendants' workplaces; and (4) approving the deadline reminder notice ("Deadline Reminder") for mailing to the Collective Action Members, attached to the Pelton Decl. as Exhibit E.

Throughout the relevant time period, Defendants had a policy of paying employees only for time worked on job sites while requiring operators to arrive at a yard to perform various work duties before traveling to job sites, travel between job sites in a single day, and return to the yard to perform additional work at the end of the day. This policy, which resulted in Plaintiff and all machine operators working substantial unpaid off-the-clock hours each week, remained consistent throughout the relevant time period and regardless of which job site where they were assigned and resulted in these individuals not receiving overtime premiums for all overtime hours worked. All machine operators are therefore "similarly situated" for the purposes of collective action notice.

**STATEMENT OF FACTS**

Plaintiff is a former machine operator who worked for Safeway Construction, primarily

1

operating backhoes on public streets and roadways in Manhattan and sometimes other parts of New York City. (*See* Pelton Decl. Ex. B (Amigon Decl.) ¶¶ 1-2; *see generally* Ex. A (Compl.)).[1]

Defendant Steven Cestaro (the "Individual Defendant") is an owner and operator of Safeway Construction Enterprises LLC ("Safeway Construction" or the "Corporate Defendant" and, collectively with the Individual Defendant, "Defendants"). (Ex. A ¶¶ 17-19). Safeway Construction is a construction contractor specializing in underground installation, repairs, upgrades and maintenance of gas, electrical, water, steam and telecommunications infrastructure throughout New York City. (Ex. A ¶¶ 26, 28; Ex. B ¶ 3). Safeway provides these services under contracts with New York City and/or New York State on projects throughout New York City, including Consolidated Edison Company of New York, Inc. ("Con Ed") construction projects. (Ex. A ¶ 31). Defendant Cestaro ran the business of Safeway Construction; set policies including time and pay policies; supervised and managed Safeway Construction job sites, foremen and supervisors, and employees; met with Con Ed employees and inspectors; hired and paid employees, including Plaintiff. (Ex. A ¶¶ 17-19, 29-30; Ex. B ¶ 10).

Plaintiff alleges that Defendants violated his FLSA rights and the rights of all machine operators by failing to pay overtime premiums for all hours worked in excess of forty (40) hours per week and subjected them to numerous NYLL violations as well. (Ex. A, *passim*).

**Plaintiff's Work for Defendants**

Plaintiff worked for Defendants as a backhoe operator from September 2016 through December 2018 and from March 2019 through January 2020. (Ex. B ¶ 1). During this time, he worked on New York City public streets, primarily in Manhattan. (*Id.* ¶ 2). Plaintiff performed this work on job sites pursuant to certain contracts Safeway entered into with Con Ed and/or other New

---

[1] All exhibit references are to the Pelton Decl.

York City and/or New York State public entities (the "Public Works Contracts"). (*Id.* ¶¶ 3, 7).

For the first portion of Plaintiff's employment, through December 2018, Plaintiff typically worked on the job sites five (5) days per week, from 7:00 am to 3:30 pm, for an average of forty-two and one-half (42.5) hours per week. (Amigon Decl. ¶ 4). During the second portion of his employment, from March 2019 to January 2020, Plaintiff continued to work at the job sites from 7:00 am to 3:30 pm, but Defendants decreased his scheduled work days from an average of four (4) days to one (1) day per work at the end of his employment. (*Id.* ¶ 4).

In addition to hours worked on the job sites, Plaintiff was required to arrive at the Safeway yard, located at 54-60 44th Street, Maspeth, NY (the "Maspeth Yard") between 5:00 am and 6:00 am, to perform work duties including receiving his job assignment or job assignments for the day, discussing his job assignment with his supervisors, and performing a daily inspection of the backhoe. (Amigon Decl. ¶ 5). Plaintiff was required to perform numerous checks and assessments on the backhoe including fuel, coolant, and oil levels; checking for damages and leaks; checking data plates, load rating plates, battery and terminals; and verifying the operation of the controls. Plaintiff was required to ensure that the backhoe was in perfect operating condition before he could leave the Maspeth Yard to travel to his job assignment. (*Id.*). In total, the inspection took approximately thirty (30) minutes. (*Id.*). After finishing his work at the Maspeth Yard, Plaintiff then drove the backhoe to his first job assignment for the day, where he typically arrived at 7:00 am. (*Id.* ¶ 6). Plaintiff was sometimes required to report to two to five (2-5) job sites in a single workday. (*Id.* ¶ 5). After finishing his work at the job sites for the Public Works Projects, Plaintiff was required to drive the backhoe back to the Maspeth Yard and prepare a report of every job site where he had worked for the day and his hours worked and drop the report in a small box located at the Maspeth Yard. (*Id.* ¶ 6). Plaintiff was occasionally assigned to work on Con Ed job sites

3

pursuant to "per diem" contracts between Defendants and Con Ed. (*Id.* ¶ 7). On these occasions, he first performed the daily inspection of the backhoe at the Maspeth Yard, then drove the backhoe to a Con Ed yard located at 110th Street between 1st and 2nd Avenues in Manhattan to receive his job assignment from a Con Ed supervisor or foreman. (*Id.*). After finishing his work for the day, Plaintiff would then drive the backhoe back to the Maspeth Yard. (*Id.*).

Throughout Plaintiff's employment, Plaintiff and other machine operators were instructed by Safeway supervisors to track only the hours they worked on the Public Works Projects job sites—typically 7:00 am to 3:30 pm—and not the hours that they worked at the Maspeth Yard or traveling between the Maspeth Yard and job sites. (Amigon Decl. ¶¶ 8-10, 14-16).

**Defendants' Method of Compensating Plaintiff**

Throughout Plaintiff's employment, Plaintiff experienced numerous unlawful payment practices by Defendants. During Plaintiff's employment, he was paid on an hourly basis, for work performed on the job sites only, at or about the prevailing wage rate for laborers. (Amigon Decl. ¶ 11). As a result of Defendants' repeated instructions to Plaintiff that he was to report only the hours worked on job sites and not hours worked at the Maspeth Yard or travel time between the Maspeth Yard and job sites, Plaintiff did not receive any wages for a substantial number of hours worked per week, let alone overtime premiums for such hours worked in excess of forty (40) in a week. (Amigon Decl. ¶¶ 7-9, 11, 14). In addition, as a backhoe operator, Plaintiff was entitled to higher prevailing wage rates for machine operators than the laborer rates that he received; in fact, Plaintiff was at one point notified that he would be admitted into the appropriate machine operator union, but this never occurred and he was paid the incorrect laborer rates throughout his employment with Defendants. (*Id.* ¶ 11-13).

**Compensation Structure of Defendants' Machine Operators**

Plaintiff is aware, based on his conversations with Safeway supervisors, a shop steward at Safeway, and other Safeway construction employees, that Defendants' policies of paying machine operators for fewer hours than they actually worked, resulting in underpayment of overtime premiums, and of paying machine operators at rates significantly below the correct prevailing wage rate for their duties, were corporate policies that applied to all machine operators who were employed by Defendants. (Amigon Decl. ¶¶ 8-10, 14-16). Specifically, Plaintiff was instructed on many occasions by Safeway supervisors, including "Philip," and observed that they instructed other Safeway employees including "Marcos," "Damian," "Frank," and "James," who worked as laborers, and "Luigi" and "Danys," who worked as machine operators, to only clock the hours that they worked at job sites despite the fact that Plaintiff observed these individuals working a substantial amount of time at the Maspeth Yard. (*Id.* ¶ 15-16). Plaintiff also discussed with "Danys," who worked as a machine operator, Defendants' rule allowing employees only to clock hours worked at job sites and the result that they did not receive any wages at all for a significant number of hours worked. (*Id.* ¶ 16). Plaintiff discussed Defendants' payment of laborer prevailing wage rates to machine operators with "Danys" and "Luigi," who worked as machine operators and were likewise paid a laborer rate during at least a portion of their employment with Defendants, and with Matthew Culhane, the shop steward for Safeway. (*Id.* ¶ 17).

**Defendants' Awareness of, and Failure to Remedy, Illegal Pay Practices**

Throughout the relevant time period, Defendants were well aware that Plaintiff and other construction employees spent a substantial number of hours per week performing work at the Maspeth Yard and traveling between the Maspeth Yard and job sites but instructed employees not to track this time, such that Defendants knew that Plaintiff and other machine operators were not paid overtime premiums for all hours worked. (Amigon Decl. ¶¶ 10, 15). Defendants were also

5

aware that Plaintiff was paid less than the correct prevailing wage rates. (*Id*. ¶ 13). Defendants own and operate a sophisticated construction business, have been involved in at least two (2) previous wage and hour lawsuits (Compl. ¶ 67), and were or should have been aware of federal and state wage and hour laws.

## ARGUMENT

### I.  CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION IS APPROPRIATE IN THIS CASE

The FLSA's "collective action" provision allows one or more employees to bring an action for wage violations on behalf of themselves and other employees who are "similarly situated." 29 U.S.C. § 216(b); *Shariar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 243-44 (2d Cir. 2011). "The evident purpose of the [FLSA] is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." *Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D. Ky. 1941). These collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The Second Circuit Court of Appeals has endorsed a two-step method of certification in an opt-in collective action under the FLSA. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). At the first step, the Court must determine whether it is appropriate to send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," thus issuing a "conditional certification" of the collective action. *Id.* at 555, The burden for demonstrating that potential plaintiffs are similarly situated is "very low," *Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794, 2013 U.S. Dist. LEXIS 89254, at *9-*10 (S.D.N.Y. June 25, 2013), which "is consistent with the broad remedial purpose of the

6

FLSA." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 336 (S.D.N.Y. 2010).

Here, Plaintiff seeks to bring his FLSA claims for unpaid overtime premiums on behalf of all machine operators who worked for Safeway at any time from October 29, 2017 to the present.

### A. Conditional Certification Requires Only a Minimal Showing that Plaintiff Is Similarly Situated to Other Employees

The standard for conditionally certifying a FLSA collective action and authorizing notice to potential opt-in plaintiffs, that the named plaintiff and the potential opt-in plaintiffs be 'similarly situated,' is "not a stringent one." *Wraga v. Marble Lite, Inc.*, No. 05-cv-5038, 2006 U.S. Dist. LEXIS 60457, at *3 (E.D.N.Y. Aug. 22, 2006). At the conditional certification stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Ramos v. Platt*, No. 13-cv-8957, 2014 U.S. Dist. LEXIS 100549, at *8 (S.D.N.Y. July 23, 2014). Plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers* 624 F.3d at 554.

The amount of evidence Plaintiff must put forward to prevail in the 'similarly situated' inquiry is minimal. A statement of the Named Plaintiff setting forth his personal knowledge of defendants' common violations of the FLSA is more than enough to warrant FLSA conditional certification. *See*, *e.g.*, *Ramos*, 2014 U.S. Dist. LEXIS 100549 ("conditional certification may be granted on the basis of the complaint and the plaintiff's own affidavits"). "Indeed, courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." *Hernandez*, 2013 U.S. Dist. LEXIS 89254, at *7; *see also Gonzalez v. Scalintella, Inc.*, No. 13-cv-3629, 2013 U.S. Dist. LEXIS 168540, at *6 (S.D.N.Y. Nov. 22, 2013) (one affidavit sufficient, citing cases); *Zheng Fang v. Yongjing Zhuang*, No. 10-cv-1290, 2010 U.S. Dist. LEXIS 133618, at *7-8 (E.D.N.Y. Dec. 1, 2010).

Courts often find employees to be "similarly situated" for purposes of the FLSA even where they worked at sites or locations where the Plaintiff did not work, as long as they were subject to the same allegedly unlawful policy. *See, e.g., Garcia v. Four Bros. Pizza*, No. 13-cv-1505, 2014 U.S. Dist. LEXIS 75015, at *16-*19 (S.D.N.Y May 23, 2014) (granting conditional certification where plaintiffs' "precise job descriptions and work locations varied" and plaintiffs alleged uniform policy extending to locations where none of the named plaintiffs worked); *see also Cano v. Four M Food Corp.*, No. 08-cv-3005, 2009 U.S. Dist. LEXIS 7780, at *4 (E.D.N.Y. Feb. 3, 2009) ("It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs").

Here, the declaration of a named plaintiff who worked at numerous job sites throughout New York City and has set forth detailed information about Defendants' pay practices presents sufficient evidence to satisfy Plaintiff's evidentiary burden by demonstrating that Defendants' unlawful pay practices were common to him and other similarly situated employees. In fact, Safeway manual laborers received conditional certification of a collective in another matter based on this same policy. *See Egan v. Safeway Constr. Enterps., Inc.*, No. 19-cv-2052 (RJD)(PK), Minute Entry dated Aug. 8, 2019; Order dated Aug. 9, 2019. As such the facts in this case fit neatly with the contours of the well-settled 'similarly situated' inquiry.

### B. All Defendants' Machine Operators Are Similarly Situated

Plaintiff and the Collective Action Members were all employed by Defendants, worked similar schedules often exceeding forty (40) hours per week at job sites, had similar job duties including required work at the Maspeth Yard before and after work at job sites, and were paid in accordance with common timekeeping practices, specifically, Defendants' prohibition on

reporting hours that they worked outside of the job sites. These policies resulted in Plaintiff and the Collective Action Members not receiving any wages at all, let alone overtime premiums, for many hours that they worked in excess of forty (40) per week. Plaintiff knows that these policies and practices applied to all Collective Action Members through instructions received from Safeway supervisors and discussions with and observations of other machine operators, who likewise spent a substantial amount of time before and after working at the job sites performing work at the Maspeth Yard and in traveling to and from job sites and the Maspeth Yard. (*Supra* at Statement of Facts section). Hence, all Defendants' machine operators were similarly situated with respect to Defendants' unlawful pay policies of failing to pay all overtime premiums due. Any slight variations in their job duties and/or wage rates do not change the fact that the Named Plaintiff and the Collective Action Members all experienced Defendants' payment policies of failing to pay overtime. *See, e.g., Ravenell v. Avis Budget Car Rental, LLC*, No. 08-cv-2113, 2010 U.S. Dist. LEXIS 72563, at *11-12 (E.D.N.Y. July 19, 2010) (conditionally certifying a nationwide class based on common compensation policy).

The claims of Plaintiff and the Collective Action Members for unpaid overtime rely on the same legal theories, and any defenses to their claims would be common to all. All are also similarly affected by the question of whether Defendants' violations were "willful" as that term is defined in the FLSA. Thus, in light of the extensive similarities between the Named Plaintiff and the Collective Action Members, and the lenient 'similarly situated' inquiry, conditional certification of the Collective Action is appropriate.

## II. THE ISSUANCE OF A *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE IN THIS CASE

The U.S. Supreme Court has endorsed the practice of issuing notice to inform potential opt-in plaintiffs of a pending collective action, and issuance of such notice is now standard

practice. *Hoffman-LaRoche*, 493 U.S. at 170. Notice serves the goals of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action," and prevents the possibility of "misleading communications" from the parties to potential opt-in plaintiffs. *Id*. at 171-72. Once a collective action is conditionally certified, it depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170.

### A.     The Proposed Notice Is Fair and Accurate

Plaintiff's proposal for court-approved Notice is "timely, accurate, and informative." *Hoffman-LaRoche*, 493 U.S. at 172. It provides notice of the pendency of the action and of the opportunity to opt-in. Plaintiff's legal claims are accurately described. Potential opt-ins are advised that Defendants will defend against the claims and that they are not required to participate. The Notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. *See* 29 U.S.C. § 215(a)(3). Providing the Notice in both English and Spanish will allow for effective communication regarding the lawsuit to potential plaintiffs whose primary language is Spanish.

This Court should order that notice be provided through two means. First, as an efficient way to reach all collective action members currently employed by Defendants, the Court should order Defendants to post notice of the collective action and consent forms in a conspicuous location at the Maspeth Yard where it can be easily seen by potential collective action members. Posting these materials is efficient, non-burdensome method of notice. *See, e.g., Ramos*, 2014 U.S. Dist. LEXIS 100549, at *18 (ordering posting of notice "in a conspicuous location and every work site… where potential opt-in plaintiffs are presently employed"). Conspicuously posting Notice and consent forms will effectively inform current machine operators about the collective action claims. If the Notice is posted conspicuously, the goal of ensuring that all *currently employed*

10

Collective Action Members are aware of the lawsuit could be achieved.

Notice and Consent forms should also be mailed by first class mail and emailed to potential plaintiffs' last known addresses. This is consistent with established practice under the FLSA. *Hoffman-LaRoche*, 493 U.S. at 172; *Vasto v. Credico (USA) LLC*, No. 15-cv-9298, 2016 U.S. Dist. LEXIS 60158, *50 (S.D.N.Y. May 5, 2016) (distribution by mail and email typically approved). The Notice should be sent to all putative plaintiffs who worked for Defendants during the three years preceding the filing of the Complaint. *See, e.g.*, *Ramos*, 2014 U.S. Dist. LEXIS 100549, at *14. Those members interested in participating would be required to file their consents with Plaintiff's counsel within sixty (60) days of receiving the forms.

Plaintiff's counsel should also be authorized to send a deadline reminder letter, which serves an important purpose of notifying potential plaintiffs that their right to join this lawsuit is limited. Courts have discretion in regulating class actions and protecting plaintiffs' First Amendment rights to communicate with prospective putative collective members. *See Hinterberger v. Catholic Health Sys., Inc.*, No. 08-cv-3805, 2010 U.S. Dist. LEXIS 96435, at *33 (W.D.N.Y. May 13, 2010) ("[C]ourt-imposed restrictions on an attorney's ability to communicate with prospective class members… 'involve serious restraints on expression,' protected by the First Amendment") (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981)). Deadline reminders are also appropriate to ensure potential plaintiffs are fully aware of their rights and to promote the FLSA's intended purpose for providing notice to prospective class members. *See, e.g., Chhab v. Darden Rests., Inc.*, No. 11-cv-8345, 2013 U.S. Dist. LEXIS 135926, at *50-*51 (S.D.N.Y. Sept. 20, 2013); *Morris v. Lettire Constr., Corp.,* 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."). Sending

Notice and consent forms to opt-in plaintiffs is standard operating procedure in this Circuit, and Plaintiff respectfully requests that this Court authorize it.

### B. This Court Should Order Defendants to Produce the Limited Amount of Information Necessary to Ensure Timely and Effective Notice

Since only Defendants know the names, addresses, phone numbers and email addresses of the Collective Action Members, early exchange of a mailing list for potential opt-ins is a routine component of notice in collective actions. *Hoffman-LaRoche*, 493 U.S. at 170 (the "District Court was correct to permit discovery of names and addresses…"); *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("[c]ertainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion'").

Expediting this limited information exchange is particularly important because the statute of limitations may not be tolled for particular plaintiffs until they file their "Consent to Sue" forms. 29 U.S.C. § 256(b); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997). Courts in this Circuit routinely order production of this information in FLSA actions. *See, e.g., Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119, 2014 U.S. Dist. LEXIS 66234 (S.D.N.Y. May 13, 2014) (mail addresses, e-mail addresses, telephone numbers); *Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 514 (S.D.N.Y. 2010) ("[c]ourts in the Second Circuit have been progressively more expansive regarding the extent of employee information they will order defendants to produce in FLSA collective actions, even at the pre-certification stage"). As Plaintiff is not requesting unusual or extraordinary relief, Plaintiff respectfully requests that this Court order Defendant to provide the information listed above in paper and digital format, to expedite the mailing of notice.

### CONCLUSION

For all of the foregoing reasons, this Court should conditionally certify the Collective and

authorize notice to the potential plaintiffs informing them of their right to join this Action.

Dated: New York, New York
April 23, 2021                              **PELTON GRAHAM LLC**

By: _/s/ Brent E. Pelton_
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative Collective*

13