UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                         :
ANTONIO AMIGON, Individually and On Behalf
of All Others Similarly Situated,                  :

                           Plaintiff,                       :

       -against-                             :

SAFEWAY CONSTRUCTION ENTERPRISES,  :
LLC and STEVEN CESTARO, Jointly and
Severally,                                         :

                         Defendants.                 :
-------------------------------------------------------------- x

**DECISION AND ORDER**

20-CV-5222 (PK)

**Peggy Kuo, United States Magistrate Judge:**

Antonio Amigon ("Lead Plaintiff") brought this action on October 29, 2020, against Safeway Construction Enterprises, LLC ("Safeway") and Steven Cestaro ("Cestaro") (collectively, "Defendants") on behalf of themselves and all similarly situated employees of Defendants, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (*See* Am. Compl., Dkt. 41.)

Lead Plaintiff has filed an unopposed Motion for Final Approval of Class and Collective Action Settlement, Service Awards, and an Award of Attorneys' Fees and Costs. ("Motion," Dkt. 77.) For the reasons stated below, the Motion is granted.

## BACKGROUND AND PROCEDURAL HISTORY

The Court assumes familiarity with the underlying facts in this action as set forth in the Court's Preliminary Approval Order. (*See* Dkt. 73.) On December 9, 2024, the Court preliminarily certified a settlement class consisting of all current and former individuals who worked for Safeway in New York as backhoe operators at any time between March 15, 2014, and March 26, 2024 ("Settlement Class"), and preliminarily approved the parties' proposed class settlement. (*Id.* at 19-20.) In addition,

1

the Court preliminarily certified Lead Plaintiff as the class representative, and Pelton Graham LLC as Lead Counsel and appointed CPT Group ("Claims Administrator") to act as the Claims Administrator for the class settlement and distribute the Notice, Claim Form (together, "Notice Packet"), and Reminder Notice to Class Members.  (*Id.* at 20-21.)

Pursuant to the Preliminary Approval Order, the Claims Administrator was provided with the Class List[1] containing the name, last known address, employment dates, hourly rate, workweeks, and email addresses of 87 Class Members.  (Decl. of Laura Singh ("Singh Decl.") ¶ 5, Dkt. 79.)

The Claims Administrator mailed the Notice Packets and Reminder Notices in English and Spanish to all 87 Class Members.  (*Id.* ¶¶ 7-8).  Of these mailings, only one Notice Packet was returned as undeliverable.  (*Id.* ¶ 10.)  The Claims Administrator also emailed the Notice Packets and Reminder Notices to 73 Class Members who had valid email addresses.  (*Id.* ¶¶ 7-8.)  The Claims Administrator received a total of 54 Claim Forms before the May 12, 2025 deadline, which reflects a claims rate of 62.06%.[2]  (*Id.* ¶¶ 7, 12.)

Lead Plaintiffs filed the Motion on May 27, 2025.  The Motion is unopposed, and Defendants do not object to the requests for attorneys' fees, costs, or service awards.  The Court held a fairness hearing on June 25, 2025.  No Class Member objected to the settlement or submitted a request to opt out of the Settlement Class at or before the hearing.  (Singh Decl. ¶ 11.)

After the fairness hearing, the parties filed a joint letter memorializing the parties' agreement regarding the resolution of claims that were addressed at the hearing but not briefed in the Motion.  ("Joint Letter," Dkt. 82.)  These claims concern: (i) two Class Members who submitted Claim Forms

---

[1] This Decision and Order incorporates by reference the definitions in the Settlement Agreement (Dkt. 68-1), and all capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement unless separately defined herein.

[2] The Claims Administrator states that the participation rate is 61.36% (Singh Decl. ¶ 12), but 54 out of 87 Class Members is 62.06%.

after the May 12, 2025 deadline[3]; (ii) one Opt-In Plaintiff who did not submit a Claim Form[4]; (iii) 10 individuals who were not on the original Class List but submitted Claim Forms and requested inclusion ("Disputed Class Members")[5]; and (iv) two Class Members who disputed their dates of employment.[6] (*Id.*)

Having considered the Motion, the supporting declarations, the arguments presented at the June 25, 2025 fairness hearing, and the complete record in this matter, for good cause shown, the Court: (i) grants final approval of the settlement as memorialized in the Settlement Agreement and the Joint Letter; (ii) approves a service award to Lead Plaintiff in the amount of $10,000.00; (iii) approves service awards to the four Opt-in Plaintiffs who were deposed in this lawsuit—John O'Rourke, William Dulmage, Anthony Conceicao, and John Certo—in the amount of $2,500.00 each; (iv) approves an award of attorneys' fees and costs in the amounts of $1,000,000.00 and $7,855.48, respectively; and (v) approves a payment to the Claims Administrator for administration fees in the amount of $10,250.00.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

(1) Following the distribution of the Notice Packets and Reminder Notices to Class Members, and now having had an opportunity to consider Class Members' reaction to the proposed settlement, the Court grants final approval of the settlement as memorialized in the Settlement Agreement and the Joint Letter and "so orders" all of their terms which are incorporated herein.

---

[3] These individuals are Christopher Vitale and Peter Rello. (Joint Letter.)

[4] This individual is Raymond Flynn. (*Id.*)

[5] Another individual who was not on the original Class List, Thomas Culhane, also submitted a Claim Form and requested inclusion but, according to Defendants, he has submitted a claim covering his full period of employment in a related action—*Egan v. Safeway Construction Enterprises, LLC*, 19-CV-2052 (PK) (E.D.N.Y.). (Joint Letter.) The parties have agreed that any amount due to Mr. Culhane will be paid using the unclaimed funds from the *Egan* settlement. (*Id.*)

[6] These individuals are Italo Maruca and Robert Timmins. (*Id.*)

(2) The Court finds that a total of 67 individuals are entitled to receive their Settlement Checks pursuant to the Settlement Agreement: (i) Lead Plaintiff and four Opt-In Plaintiffs (Preliminary Approval Order ¶ 11(c)); (ii) 50 Class Members, other than Lead Plaintiff and Opt-In Plaintiffs, who have timely submitted valid Claim Forms (Preliminary Approval Order ¶ 11(a); Singh Decl. ¶ 12; Joint Letter, Dkt. 82); (iii) the two Class Members who submitted Claim Forms after the May 12, 2025 deadline (Joint Letter, Dkt. 82); and (iv) 10 Disputed Class Members (*Id.*) (collectively, "Participating Claimants").

(3) As previously addressed by the Court when it granted preliminary certification of the Settlement Class, the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a) and (b)(3) of the Federal Rules of Procedure have been met, warranting class certification for purposes of effectuating settlement. (*See* Preliminary Approval Order at 14-17.)

(4) The Court grants final certification to the following class for settlement purposes pursuant to Rule 23(e): "all current and former individuals who worked for Safeway in New York as backhoe operators at any time during the period of March 15, 2014, through March 26, 2024." (Settlement Agreement ¶ 1.7.)

(5) Because no Class Member opted out of the Settlement Class, every Class Member fully releases and discharges Defendants from all wage and hour claims under New York State and local law arising from their employment with Defendants during the Class Period as set forth in ¶¶ 1.33 and 10.1 of the Settlement Agreement. This release includes claims for liquidated damages, interest, and attorneys' fees and costs. (*Id.* ¶ 1.33.)

(6) The Court conditionally approved the FLSA collective asserted by Lead Plaintiff. (Jan. 23, 2022 Order, Dkt. 27.) The Court now finds that Participating Claimants are similarly situated in that they worked for Defendants in New York as backhoe operators during the Class Period, and

that they assert claims under FLSA § 207(a) and NYLL §§ 193, 195. (*See* Am. Compl.) Accordingly, the Court grants final certification of FLSA collective action under FLSA § 216(b), for settlement purposes, to all Participating Claimants. *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) (explaining that named plaintiffs and opt-in plaintiffs are "similarly situated" within the meaning of FLSA § 216(b) when they "share a similar issue of law or fact material to the disposition of their FLSA claims").

(7) Each Participating Claimant fully releases Defendants from all wage and hour claims under federal and New York State and local law arising from their employment with Defendants during the Class Period as set forth in ¶¶ 1.34 and 10.2 of the Settlement Agreement. This release includes claims for liquidated damages, interest, and attorneys' fees and costs, but excludes workers' compensation claims. (Settlement Agreement ¶ 1.34.)

(8) In preliminarily approving the Settlement Agreement, the Court previously considered the requirements of Rule 23(e)(2), weighed the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974), and found that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate. (Preliminary Approval Order at 5-11.)

(9) The Court now finds that (a) the Settlement Agreement results from good faith, arm's length negotiations, including mediation under the direction of an experienced mediator; (b) Lead Plaintiff and Lead Counsel—who is experienced in class-action employment litigation and had sufficient information to evaluate the settlement—have fairly and adequately protected the interests of the Settlement Class; (c) the relief provided to the Settlement Class is adequate; and (d) Class Members are treated equitably relative to each other.

(10) The Court also considered the remaining *Grinnell* factors—the stage of the proceedings and the amount of discovery completed, the ability of Defendants to withstand a greater judgment, the range of the settlement fund in light of the best possible recovery, and the range of

5

reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation—in preliminarily approving the Settlement Agreement. (*See* Preliminary Approval Order at 11-12.) The Court previously found and now affirms that these remaining *Grinnell* factors weigh in favor of final approval.

(11) The only factors the Court could not address in the Preliminary Approval Order was the reaction of the Class Members to the settlement. (*Id.* at 11.) With respect to that factor, the response to the settlement has been positive. The Claims Administrator distributed Notice Packets to 87 Class Members, with only one Notice Packet being returned as undeliverable. (Singh Decl. ¶ 10). The Claims Administrator received 54 Claim Forms before the May 12, 2025 deadline, which reflects a claims rate of 62.06%. (*Id.* ¶ 12.) The parties also received two Claim Forms after the May 12, 2025 deadline, and 11 Claim Forms[7] from individuals who were not on the original Class List. (Joint Letter, Dkt. 82.) Moreover, no Class Member objected to the settlement or submitted a request to opt out of the Settlement Class at or before the fairness hearing. (Singh Decl. ¶ 11.) Accordingly, the Court approves the proposed settlement as fair, reasonable, and adequate. *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 n.8 (approving wage and hour class settlement with 14.6% participation rate, and observing that class action settlements based on claims submission "typically have a participation rate in the 10-15 percent range.").

(12) The Court finds that sufficient notice of the proposed settlement was given to bind all Class Members. The Claims Administrator sent the Notice Packet to all potential Class Members at their last known mailing address, with 60 days to opt in or opt out of the Settlement Class. (Singh Decl. ¶ 7.) The Claims Administrator delivered 86 of the 87 Notice Packets that were mailed, resulting in an undeliverable rate of approximately 1%. (*Id.* ¶ 10.) The Court finds that

---

[7] The 11 Claim Forms were submitted by Disputed Class Members and Mr. Culhane. *See* note 5, *supra*.

the Notice Packet was the best notice practicable to allow Class Members a full and fair opportunity to consider the proposed settlement and develop a response. The Court further finds that the distribution of the Notice Packet was the best reasonable method to reach all Class Members who would be bound by the Settlement Agreement, and that the Notice Packet and its distribution satisfy the notice requirements of Rule 23(e) and FLSA § 216(b).

(13) The Court approves the FLSA settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). After consideration of the information provided, including that the agreement is the product of contested litigation and arm's length negotiations with the assistance of experienced counsel, the Court finds the FLSA settlement is fair and reasonable. *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

(14) The Settlement Agreement provides for a maximum Gross Settlement Amount of $3,000,000.00, of which $1,961,894.52 is available as the Net Settlement Amount to satisfy the claims of all Participating Claimants. (Singh Decl. ¶ 13.) Of the 67 Participating Claimants, 54 Participating Claimants who have timely submitted Claim Forms have claimed $1,613,925.60 ("Claimed Funds"), and their respective shares shall be paid from the Claimed Funds based on the formula set forth in ¶ 9.2(B) of the Settlement Agreement. (Singh Decl. ¶ 12.)

(15) The remaining funds in the amount of $347,968.92 ("Remaining Funds") shall be used to resolve the claims related to the (i) two Participating Claimants who submitted Claim Forms after the May 12, 2025 deadline; (ii) one Participating Claimant who is also an Opt-In Plaintiff and did not submit a Claim Form; (iii) 10 Disputed Class Members; and (iv) additional amounts claimed by the two Participating Claimants who timely submitted Claim Forms but disputed their dates of employment. (Joint Letter.) Each Disputed Class Member's share shall be reduced pro rata based on the balance in the Remaining Funds after the other claims set forth in this paragraph have been resolved. (*Id.*)

(16) Lead Counsel has extensive experience in wage and hour collective and class action litigation and was, therefore, well equipped to have negotiated a fair settlement for the Settlement Class. The Court grants Plaintiff's request for attorneys' fees inclusive of costs. The Court awards Lead Counsel $1,000,000.00 in attorneys' fees, reflecting 33.3% of the Gross Settlement Fund, plus $7,855.48 for costs. This amount shall be paid from the Settlement Fund pursuant to ¶ 9.4(A) of the Settlement Agreement. The Court finds, in its discretion, that this award of a percentage of the gross Settlement Fund is reasonable, regardless of the amount claimed by Class Members. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) (holding district court erred in calculating attorneys' fees as "the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel"). The fee award represents a lodestar multiplier of 3.86 based on the contemporaneous billing records submitted by Lead Counsel (*See* Billing Records, Dkt. 78-2). *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."). The fee award is justified by the work that Lead Counsel did in conducting the litigation, negotiating the settlement, achieving the ultimate recovery, and by the risk that Lead Counsel undertook in bringing the claims.

(17) The Court finds the service award of $10,000.00 to Lead Plaintiff, who brought the action on behalf of the Settlement Class, to be reasonable. The Court further finds that the service award of $2,500.00 each to the four Opt-In Plaintiffs who were deposed in this action is reasonable: John O'Rourke, William Dulmage, Anthony Conceicao, and John Certo. The service awards shall be paid from the Settlement Fund pursuant to ¶ 9.6 of the Settlement Agreement.

(18) The Court previously appointed CPT Group as the Claims Administrator. (Preliminary Approval Order at 20.) Class administrator fees in the amount of $10,250.00 shall be paid to

8

Arden from the Settlement Fund pursuant to ¶ 9.6 of the Settlement Agreement. (Singh Decl. ¶ 13.)

(19) Defendants must pay the remaining amount needed to fully fund the Qualified Settlement Fund pursuant to the payment schedule set forth in ¶ 9.1(B) of the Settlement Agreement by depositing the required amount of funds with the Claims Administrator.

(20) Pursuant to ¶ 9.1(C) of the Settlement Agreement, the Claims Administrator is directed to distribute payments to all Participating Claimants, the Service Award Recipients, and to Co-Lead Counsel for attorneys' fees and costs within ten (10) days of the Effective Date. If no appeal is taken, the Effective Date is the date this Final Approval Order is no longer appealable. (*See* Settlement Agreement ¶¶ 1.13; 9.1(C).) If an appeal is taken, the Effective Date shall be the day after the date of final dismissal of any appeal from this Final Approval Order. (*Id.*) The Court directs the Claims Administrator to distribute payments to the Participating Claimants first before distributing other required payments under ¶ 9.1(C).

(21) Any amounts that remain in the Qualified Settlement Fund following the Check Cashing Period shall first be used to gross up the pro-rata reductions applied to Disputed Class Members. (Joint Letter, Dkt. 83)

(22) This action is hereby dismissed with prejudice with leave to reopen on or before September 2, 2025.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:  Brooklyn, New York
        July 2, 2025

9